**EXHIBIT "3"**

CAUSE NO. ____________

| DIAGEO BRANDS B.V. | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| | § | |
| v. | § | WEBB COUNTY, TEXAS |
| | § | |
| | § | |
| UETA INC. | § | ______ JUDICIAL DISTRICT |

**AFFIDAVIT OF JED DRYER**

STATE OF FLORIDA §
§
COUNTY OF DADE §

BEFORE ME, the undersigned authority, on this day personally appeared Jed Dryer, known to me personally, who after being by me duly sworn, upon his oath deposed and stated as follows:

"My name is Jed Dryer. I am over the age of eighteen (18) years, have never been convicted of a felony or misdemeanor involving moral turpitude, and am otherwise qualified to execute this Affidavit. I have gained personal knowledge of all of the facts stated herein in the performance of my job duties, and each such fact is true and correct.

"I am a custodian of records for this account. Unless otherwise indicated, the following exhibits are kept in the regular course of business of Diageo, and it is the regular course of business for an employee or representative of Diageo, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the exact duplicates of the original.

""Pursuant to multiple purchase orders, UETA, as Customer, ordered, and Diageo, as Seller, supplied and invoiced, Diageo Products from the list below::

| |
|---|
| Archers Peach 1L 12x01 |
| Barton & Guestier Blanc De Blanc |
| Barton & Guestier Chablis |
| Barton & Guestier Chateauneuf Du Pape |
| Barton & Guestier Margaux Tradition |
| Barton & Guestier Medoc |

EXHIBIT
A

| |
|---|
| Barton & Guestier Pouilly Fuisse |
| Barton & Guestier Rose D'Anjou |
| Barton & Guestier St Emilion |
| Barton & Guestier St Louis Beaujolais |
| Barton & Guestier Vouvray |
| Baileys Flavours Mint Chocolate 1.0L 12X01 |
| Baileys Flavours Crème Caramel 1.0L 12X01 |
| Baileys Coffee 12 X 1 |
| Baileys Original 1L 12x01 |
| Baileys Original 5cl 80x01 |
| Baileys Original 75cl 12x01 |
| Baileys Original 12 X 1.14 |
| Baileys Original 1.0L 06X01 2 GlPk |
| Baileys Original 1.0L 12X01 |
| Baileys Original 20cl |
| Baileys Original 375ml 12X01 |
| Baileys Original 75cl 06X01 2 GlPk |
| Baileys Original 75cl 12X01 |
| Baileys PET 12X50cl |
| Baileys 6 X 1.75 |
| Black & White 1L 12x01 |
| Blcke & Whte 75cl 12x01 |
| Buchanan's Red Seal 75cl 06x01 |
| Buchanan's Deluxe 1L 12Y 12x01 |
| Buchanan's Deluxe 37.5 12Y 24x01 |
| Buchanan's Deluxe 4.5L 12Y 03x01 |
| Buchanan's Deluxe 5cl 12Y 16x12 |
| Buchanan's Deluxe 75cl 12Y 12x01 |
| Buchanan's Mbrand 1.75L 12Y 06x01 |
| Buchanan's Special Reserve 18y 75cl 18Y 06x01 |
| Buchanan's Special Reserve 18y 75cl 18Y 06x01 |
| Black Bush 12 X 1 |
| Bushmills Original 12 X 1 |
| Bushmills malt 12 X 1 |
| Caol Ila 12yo 6X1 |
| Chequers Deluxe 1L 12x01 |
| Captain Morgan Original Spiced Rum 1L 12x01 |
| Captain Morgan Original Spiced Rum 75cl 12x01 |
| Captain Morgan Original Spiced Rum 75cl 12x01 |
| Captain Morgan Original Spiced Rum 12 X 1.14 |
| Captain Morgan Black Label 12 X 1.14 |
| Captain Morgan Original Spiced Rum Parrot Bay 1L 12x01 |
| Captain Morgan Private Stock 1L 12x01 |

| |
|---|
| Captain Morgan White 12 X 1.14 |
| Captain Morgan Parrot Bay Coconut Rum 12 X 1 |
| Ciroc 6 X 1 |
| Cragganmore 6 Pack 1L |
| Crown Royal 1L 12x01 |
| Crown Royal 1.75L 06x01 |
| Crown Royal 37.5c 24x01 |
| Crown Royal 3L 03x01 |
| Crown Royal 75cl 12x01 |
| Crown Royal 120 X 0.05 |
| Crown Royal 12 X 1.14 |
| Crown Royal Special Reserve 37.5c 12x01 |
| Crown Royal Special Reserve 75cl 12x01 |
| Crown Royal XR 6 X 75cl |
| Dalwhinnie 1L 15Y 06x01 |
| Dalwhinnie 1L 15Y 06x01 |
| Dimple/Pinch 15yo 12 X 75cl |
| Dimple 1L 15Y 12x01 |
| Don Julio 1942 75cl 06x01 |
| Don Julio Anejo 75cl 06x01 |
| Don Julio Blnco 75cl 06x01 |
| Don Julio Real 75cl 06x01 |
| Don Julio Real 75cl 06x01 |
| Don Julio Reposado, 1.75L 03x01 |
| Don Julio Reposado, 75cl 06x01 |
| Don Julio Reposado 75cl 06x01 |
| Glenkinchie 1L 10Y 06x01 |
| Godiva Liqueur 75cl 12x01 |
| Godiva White Chocolate 75cl 12x01 |
| Godiva White Chcocolate 12 X .75 |
| Goldschläger 1L 12x01 |
| Gordons Dry Gin 1L 12x01 |
| Gordons Dry Gin 1L 12 X 1.14 |
| José Cuervo Ath Lime 75cl 12x01 |
| José Cuervo Ath Strw 75cl 12x01 |
| José Cuervo Black Mdll 1L 12x01 |
| José Cuervo Citrico 1L 12x01 |
| José Cuervo Clasico 1L 12x01 |
| José Cuervo Especial Gld 1.75L 06x01 |
| José Cuervo Especial Gld 1L 12x01 |
| José Cuervo Especial Gld 1L 12x01 |
| José Cuervo Especial Gld 37.5 12x01 |
| José Cuervo Especial Gld 5cl 10x12 |

José Cuervo Especial Gld 75cl 12x01 SQ Gls
José Cuervo Oranjo 1L 12x01
José Cuervo Reserva de la Familia 75cl 03x01
José Cuervo Traditional 1.75L 06x01
José Cuervo Traditional 1L 12x01
José Cuervo Tropina 1L 12x01
Johnnie Walker Red Label 1L 12x1
Johnnie Walker Black 1L 12Y 12x01
Johnnie Walker Black 50cl 12Y 24x01
Johnnie Walker Black 75cl 12Y 12x01
Johnnie Walker Black 1L 12Y 06x01
Johnnie Walker Black 37.5 12Y 24x01
Johnnie Walker Black 4.5L 12Y 03x01
Johnnie Walker Black 5cl 12Y 10x12
Johnnie Walker Black Label 192 X 0.05
Johnnie Walker Black Label 12 X 1.14
Johnnie Walker Black Label 6 X 1.75
Johnnie Walker Black Label Anniversary 6 X 75cl
Johnnie Walker Blue King George V 75cl 03x01
Johnnie Walker Blue 1.75L 03x01
Johnnie Walker Blue 1L 06x01
Johnnie Walker Blue 20cl 24x01
Johnnie Walker Blue 75cl 06x01
Johnnie Walker Gold 75cl 18Y 12x01
Johnnie Walker Green 1L 15Y 12x01
Johnnie Walker Green 75cl 15Y 06x01
Johnnie Walker Red label 4.5L 03x01
Johnnie Walker Red label 1.75L 06x01
Johnnie Walker Red label 50cl 24x01
Johnnie Walker Red label 5cl 16x12
Johnnie Walker Red label 75cl 12x01
Johnnie Walker Red Label 12 X 1.14
Johnnie Walker Swing 75cl 12x01
Johnnie Walker Swing 75cl 0Y 12x01
Johnnie Walker Collection Pack 20cl 6X4
J+B Rare 1L 12x01
J+B Rare 75cl 12x01
J+B Rare 5cl 10x12
J+B Rare 12 X 1.14L
Johnnie Walker Gold Gift Pinstripe 0.2L 24
Lagavulin 75cl 16Y 06x01
Myers Original Dark 1L 12x01
Old Parr 75cl 15Y 12x01

Old Parr 50cl 12Y 18x01

Old Parr 1L 12Y 12x01

Old Parr 75cl 12Y 12x01

Old Parr Superr 75cl 12x01

Pimms No 1 12 X 1

Pampero 12 X 0.75

Romana Black 75cl 12x01

Romana Sambuca 1L 12x01

Seagram's 7 Crown 1L 12x01

Seagram's 7 Crown 75cl 12x01

Seagram's 7 Crown 75cl 12x01

Seagram's 83 12 X 1.14

Seagram's VO 12 X 1.14

Seagram's VO 1L 12x01

Seagram's VO 5cl 10x12 PET

Seagram's VO 75cl 12x01

Seagram's VO 75cl 12x01

Sheridans 1L 06x01

Singleton 12YO

Smirnoff Apple Twist 1L 12x01

Smirnoff Blue 1L 12x01

Smirnoff Blue 1L 12 X 1.14

Smirnoff Blue 6 X 1.75

Smirnoff Ctrs Tw 1L 12x01

Smirnoff Ice 275ml 04x06

Smirnoff Ice 331ml LWB 04x06

Smirnoff Ice 355ml LWB 04x06

Smirnoff Orng Tw 1L 12x01

Smirnoff Rasb Tw 1L 12x01

Smirnoff Red 1L 12x01

Smirnoff Red 75cl 12x01

Smirnoff Red 120 X 0.05 PET

Smirnoff Red 12 X 1.14

Smirnoff Red 6 X 1.75 PET

Smirnoff Vanilla Twist 1L 12x01

Smirnoff Vanilla Twist 1L 12x01

Smirnofff Black 1L 0Y 12x01

Smirnoff Twist Cranberry 12 X 1

Smirnoff Twist Watermellon 12 X 1

Smirnoff Twist Strawberry 12 X 1

Talisker 10yo 6X1

Talisker 57 North 6X1L

Tanqueray Gin 6 X 1.75

| Tanqueray London Gin 75cl 12x01 |
|---|
| Tanqueray Dry Gin 120x5cl PET |
| Tanqueray Dry Gin 192x5cl |
| Tanqueray Gin 12X1L |
| Tanqueray Gin 12 X 1 14 |
| Tanqueray Sterling Vodka 12 X 1 |
| Yukon Jack 12 X 1 |
| Tanqueray Ten, 12 Pack 1L |
| Vat 69 1L 12x01 |
| Vat 69 75cl 12x01 |
| White Horse 1L 12x01 |
| White Horse 75cl 12x01 |
| Zacapa 15 75cl 6x01 |
| Zacapa 15 1L 6x01 |
| Zacapa 23 75cl 6x01 |
| Zacapa 23 1L 6x01 |
| Zacapa XO 75cl 6x01 |
| Ketel One 75 cl 12x01 |
| Ketel One Citron 75 cl 12x01 |
| Ketel One 1LT 12x01 |
| Ketel One Citron 1LT 12x01 |

the ("Products").

"The sales of Products to UETA was subject to, and governed by, those certain General Conditions of Sale. A true and correct copy of an invoice for an UETA order and General Conditions of Sale is attached as Exhibit 1.

"Despite demand UETA has failed and refused to make payment for Products it ordered and received, and for which it was invoiced. As of March 2, 2009, the amount due and owing by UETA on Products it ordered and received in Texas is $39,103,541.00.

"UETA is in default of its obligations under its purchase orders and has been so notified by Diageo. To date, UETA has failed to respond by paying the amount due, as and when agreed. Additionally, despite demand, UETA has failed and refused to surrender the Products to Diageo. I have visited UETA's warehouses in Laredo in December 2008, wherein I saw vast quantities of Diageo's property. Due to the nature of the Products and UETA's international business, there is a significant risk that the Products will be moved to an undisclosed location and/or removed from the country. Additionally, UETA continues to sell the Products, despite not making payments to Diageo for them. Accordingly, Diageo believes

that UETA may dispose of, ill treat, waste, or destroy the Products during the pendency of this suit.

"Without having an opportunity to inspect the Products, Diageo believes the reasonable value of such Products totals $37,611,773.00 at this time. Finally, Diageo believes that the Products are located in Webb County at, 110 International Blvd., Laredo, Texas 78045. Possible additional locations of the Products include 5210 Bob Bullock Loop, Laredo, Texas 78042; 1208 Zaragoza, Laredo, Texas 78040; 109 Salinas; Laredo, Texas 78040; 802 Lincoln St., Laredo, Texas 78040; 1201 Water Street, Laredo, Texas 78040; 1301 E. Levee, Brownsville, Texas 78520; 1220 Mexico Blvd., Brownsville, Texas 78520; 1401 E. Elizabeth Street, Brownsville, Texas 78520; 1040 South Intl. Blvd., Hidalgo, Texas 78557; 0241 International Blvd., Progreso, Texas 78579; 109 Commercial Street, Eagle Pass, Texas 78852; 2403 Int'l O'Riley St., Presidio, Texas 79845; 919 South Stanton Street, El Paso, Texas 79901; 719 S. El Paso St., El Paso, Texas 79901; 805 South Stanton Street, El Paso, Texas 79901; and 780 S. Zaragosa Rd., El Paso, Texas 79901."

Further affiant saith not.

Jed Dryer

SUBSCRIBED and SWORN TO before me this 2 day of March, 2009, to certify which witness my hand and seal office.

NOTARY PUBLIC in and for
The State of Florida

CARRIE A. OREAMUNO
MY COMMISSION EXPIRES November 30, 2011
#DD 726515
Bonded thru Notary Public Underwriters
NOTARY PUBLIC, STATE OF FLORIDA

# EXHIBIT 1

# INVOICE

| Seller | Order Number | Page No. |
|---|---|---|
| VAT Reg No: NL8089.49.044 B01<br>Diageo Brands BV<br>P.O. Box 58182<br>1040 HD Amsterdam<br>THE NETHERLANDS<br>Tel No: +31 (0) 20 774 5000<br>Fax No: +31 (0) 20 774 5001 | 4792213 / 9618063633 | 2 /3 |
| | Invoice Date: 23.06.2008 | Customer Code: 72859 |
| | Buyer's Reference / PO Number: 24122530 | Due Date of Payment: CI90 21.09.2008 |

| Consignee | Buyer (if not consignee) |
|---|---|
| UNITED EXPORT TRADING ASSOC.<br>UETA D.F.A LAREDO WHSE, INT BLVD 1H35<br>78045 LAREDO<br>UNITED STATES | UETA INC<br>Edificio Torre Global Bank<br>Panama City PANAMA |

| Notify Party | Country of Origin of Goods | Country of Final Destination |
|---|---|---|
| | GREAT BRITAIN | UNITED STATES |
| | FDA Number: FDA 13334814908 | |
| | Letter of Credit No: | Import License Number: |

| Terms of Delivery | Payment Terms |
|---|---|
| Delivered duty unpaid - LAREDO | 90 days from Invoice Date |

| Vessel/Flight No. and Date | Local Vessel | Name of Bank and Account Number |
|---|---|---|
| SL MOTIVATOR | FEEDERLINK 1 | Bank of America<br>5 Canada Square<br>London E14 5AQ<br>Sort Code: 301635<br>Account: 25298028<br>Swift Code: BOFAGB22<br>IBAN: GB61BOFA16505025298028 |
| Local Port of Loading: | Port/Airport/Named Place of Loading: FELIXSTOWE | Payment Instruction<br>For credit to Diageo Brands BV at bank above.<br>For cover at Bank of America, New York, (SWFIT BOFAUS3N) |
| Port/Airport/Named Place of Discharge: HOUSTON PORT TX | Place of Delivery: | |

Marks & Numbers and Container Number

# INVOICE

**Seller**

VAT Reg No: NL80[illegible]9.044 B01

Diageo Brands BV
P.O. Box 58182
1040 HD Amsterdam
THE NETHERLANDS

Tel No: +31 (0) 20 774 5000
Fax No: +31 (0) 20 774 5001

**Consignee:**
UNITED EXPORT TRADING ASSOC.

**Invoice Address**
UETA INC
Edificio Torre Global Bank
Calle 50, Piso No. 36
Panama City
PANAMA

**Buyer**
UETA INC
Edificio Torre Global Bank
Calle 50, Piso No. 36
Panama City PANAMA

| Order Number | Page No. |
|---|---|
| 4792213 / 9618063633 | 3 /3 |
| **Invoice Date** | **Letter of Credit No** |
| 23.06.2008 | |
| **Buyer's Reference/PO Number** | **Due Date of Payment** |
| 24122530 | CI90 21.09.2008 |

| Product | | QTY | UoM | Price | Net Price | Line Value |
|---|---|---|---|---|---|---|
| 581175 | Buchanan Deluxe 1L 12Y 12x0 | 5,400 | CAS | 211.23 | 211.23 | 1,140,642.00 |

EAN/UPC: 5000196001046 Commodity Code: 22083052 Country of origin: GREAT BRITAIN
Gross weight: 108,648 KG Litres: 64,800.000 Dimensions mm: 370X347X265
Net weight: 61,365.600 KG Litres of Alcohol: 25,920.000 Cube: 183.600 M3
% Volume: 40.00

## GENERAL CONDITIONS OF SALE

1. GENERAL

1.1 In these General Conditions of sale the following words have the following meanings:

(i) "the Seller" means Diageo Brands B.V.;

(ii) "the Customer" means any person to whom the Seller has agreed to supply Products;

(iii) "Products" means products sold by the Seller;

(iv) "General Conditions" means the terms and conditions contained herein and pursuant to which terms the Seller sells and the Customer purchases the Products;

(v) "Territory" means the territory designated by the Seller in each corresponding invoice.

1.2 Products are sold to the Customer subject to these General Conditions, which form part of every order placed by the Customer for the supply of Products. Seller will use reasonable endeavours to supply the Products to the Customer in accordance with the Customer's orders, but each order by the Customer and acceptance by the Seller will constitute a separate contract and the Seller is not obliged to accept any order received from the Customer and can refuse to accept an order for any reason, in its sole discretion

1.3 No variation by the Customer of these General Conditions shall be binding unless agreed in writing by duly authorized officers of the Seller.

1.4 If any provision of these General Conditions is held by any court or competent authority to be void or unenforceable in whole or in part, the validity of the other provisions of these General Conditions and the remainder of the provision in question shall not be affected

1.5 References to Incoterms are references to the 1990 Edition of Incoterms published by the International Chamber of Commerce and expressions used in any contract shall have the meaning ascribed to them by the 1990 Edition of Incoterms as modified by these General Conditions.

1.7 The Customer is hereby notified that the Seller has undertaken to indemnify certain of its distributors for any damage they may suffer as a result of conduct involving a breach by the Customer of these General Conditions, including, without limitation, a breach of Customer's obligation set forth in Clause 6.

1.8 The Customer confirms that it complies with all laws, rules and regulations to which it is subject to, and agrees to inform the Seller of any relevant changes in law which could affect the Products. Customer further agrees to provide the Seller with copies of any documents reflecting sanctions or other actions taken against the Customer for failing to comply with any laws, rules or regulations

1.9 The Customer shall keep in force and make available for inspection if requested by the Seller all necessary permits, consents and licenses necessary to enable the Customer to import, distribute and sell the Products

1.10 The Customer shall implement an anti-money-laundering compliance program and perform adequate due diligence of its customers

1.11 Customer shall comply, and shall ensure that each of its employees, agents and sub-contractors complies, with the Seller's Code of Business Conduct and the Diageo Marketing Code

1.12 The Seller shall be under no liability to the Customer for sales by third parties of the Products within the Territory.

1.13 The Customer will buy the Products exclusively from the Seller on the terms set out in these General Conditions

2. PRICE

2.1 Prices for the Products shall be those applicable at the date of dispatch of the Products and the Seller reserves the right to revise its prices at any time prior to the date of dispatch.

2.2 All prices paid by Customer to Seller for the Products are exclusive of any sales, excise, customs, import, consumption or any other tax or duty, for which the Customer hereby agrees to be additionally liable. The Seller will not, under any circumstances, be liable for any such taxes

2.3 Seller may, from time to time and in its sole and absolute discretion award Customer with rebates and/or discounts. To the extent awarded, the amount of the discount and/or rebate, will be reflected in the invoices

3. PAYMENT

3.1 Unless Seller otherwise notifies Customer in writing, payment for all Products shall be received by Seller 90 days from the date of invoice. All payments will be made by wire transfer by the Customer to such bank account as is notified by the Seller to the Customer in writing from time to time. The Seller will not accept cash or cash equivalents such as travelers checks or money orders, as a form of payment.

3.2 Seller reserves the right to at any time request the Customer to provide an appropriate bank guarantee in respect of orders of the Products or to change payment terms to COD.

3.3 Time shall be of the essence in respect of all payments due by the Customer.

3.4 If any amount payable is not received by the due date then, without prejudice to any other rights or remedies available to the Seller, Seller will be entitled to do or enforce any or all of the following:-

(i) the Customer shall be liable to pay interest on such amount (both before and after any judgment) at the maximum legal rate, which shall accrue from the original due date until payment is received in full (inclusive of interest accrued);

(ii) the Seller shall be entitled to suspend, decline or refuse all further orders, shipments and/or deliveries of Product to the Customer, and

(iii) the Seller may appropriate any payment made by the Customer to such Products or part thereof as the Seller may deem appropriate (notwithstanding any purported appropriation by the Customer).

4. RISK AND TITLE

4.1 All Products supplied by the Seller under these General Conditions will be sold FOB UK seaport and the Customer will be responsible for arranging and paying all costs of transport and insurance from that point. Risk of damage to or loss of the Products shall pass to the Customer upon the earlier of: (i) shipment of the Products, (ii) transfer of the Products into the custody of the carrier, (iii) where the Products are to be made available for collection by the Customer, when the Seller has notified the customer that the Products have been made so available, or (iv) where the Products are to be placed at the disposal of the Customer at a named place of destination, when the Products have been so placed.

4.2 Notwithstanding delivery and the passing of risk in and to the Products or any other provision of these General Conditions, legal and beneficial title in the Products shall not pass to the Customer until the Seller has received payment in full in cash or cleared funds of all amounts owing to the Seller by the Customer on any account whatever.

4.3 Any payments made by the Customer for any Products supplied (whether under this or any other Contract) by the Seller shall, notwithstanding any purported appropriation by the Customer or anything in any demand by the Seller or in any statement of account between the Seller and the Customer, be appropriated first to Products which have at the date of receipt by the Seller of the payment been disposed of by the Customer, and the Seller shall likewise be and remain entitled to appropriate any balance after such appropriation of payments received to such other of the Products supplied by the Seller to the Customer as the Seller shall be in its absolute discretion decide. All Products shall be deemed to have been supplied by the Seller to the Customer unless the Customer proves otherwise to the reasonable satisfaction of the Seller.

4.4 Until title in the Products passes to the Customer, the Seller may at any time require the Customer to deliver up the Products to the Seller or as the Seller may direct and, if the Customer fails to do so forthwith, enter any premises of the Customer or any third party where the Products are stored and repossess the Products.

4.5 Until title to the Products passes to the Customer, the Customer shall hold the Products as the Seller's agent, and shall keep the Products separate from the property of the Customer and third parties and properly stored, protected and insured and identified as the Seller's property. The Customer may, unless otherwise directed by the Seller, resell or use in the ordinary course of business any Products in which title has not passed, but shall account to the Seller for the proceeds thereof (including insurance proceeds) and shall keep such proceeds separate from any monies or property of the Customer and third parties

4.6 The Customer may not in any way pledge or charge by way of security for any indebtedness any Products in which title has not passed to the Customer and if the Customer does or purports to do so all monies owing by the Customer to the Seller shall (without prejudice to any other rights or remedies of the Seller) become due and payable immediately.

5. LIABILITY

5.1 The Seller will not incur any liability to the Customer in respect of any Product disposal, cessation of production, discontinuance or delisting.

5.2 Except as otherwise provided in this Clause 5, the Seller shall not be liable for any loss or damage arising from non-delivery or delay, for whatever reason and whether in respect of the whole or part of the Products and the Customer shall not be entitled to repudiate these General Conditions for any such delay delivery or non-delivery.

5.2 The Products must be examined on receipt by or on behalf of the Customer. Any loss or damage to the Products must be notified in writing to the Seller within fourteen days of such receipt. Any damaged Products (including cartons) must be retained for inspection by the Seller. Non-arrival of Products must be notified in writing to the Seller within twenty-eight days after the estimated date of arrival at the port or place of destination.

5.3 Subject to the conditions in Clause 5.2 above being fulfilled by the Customer, the Seller shall have the option to replace any Products damaged or lost which are in the risk of the Seller or re-deliver any products not delivered or, at the Seller's option, credit the Customer for the price of Products so damaged, lost or not delivered.

5.4 If any of the Products are defective in manufacture or contained in defective containers, the Seller's sole liability arising in respect of, or consequent upon, any such defects shall be limited to the replacement of such defective Products or crediting the Customer with the price thereof, in Seller's sole discretion. Other than as specifically stated in the immediately preceding sentence, the Products are sold without any guarantees or representations and all warranties or conditions to the contrary, statutory or otherwise and expressed or implied are expressly excluded except that this shall not exclude the Seller's implied undertakings as to title under Section 12 of the Sale of Goods Act 1979.

5.5 Except as provided above, the Seller shall not be liable for any loss or damage of whatever nature and however caused.

5.6 Customer shall, at its own expense, procure and maintain comprehensive general liability insurance with a broad form endorsement sufficient to cover all liability arising as a result of the Customer's importation, distribution and/or sale of the Products. The Customer shall submit to the Seller upon the Seller's request a certificate of insurance certifying that it is in full force and effect.

5.7 The Customer shall hold the Seller and its affiliates harmless from any and all liability and expense arising from any claim, demand, action, suit or other proceeding arising from the Customer's conduct related to importation, distribution or sale of the Products and defend (at the Customer's expense) any such claims brought against the Seller and its affiliates

5.8 UNDER NO CIRCUMSTANCES WILL THE SELLER OR ITS AFFILIATES BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES OR LOST PROFITS, WHETHER FORESEEABLE OR UNFORESEEABLE, BASED ON CLAIMS OF THE CUSTOMER OR ITS CUSTOMERS (INCLUDING BUT NOT LIMITED TO, CLAIMS FOR LOSS OF DATA, GOODWILL, USE OF MONEY, OR USE OF THE PRODUCTS, INTERRUPTION IN USE OR AVAILABILITY OF DATA, STOPPAGE OF OTHER WORK OR IMPAIRMENT OF OTHER ASSETS), ARISING OUT OF BREACH OR FAILURE OF EXPRESS OR IMPLIED WARRANTY, BREACH OF CONTRACT, MISREPRESENTATION, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE, EXCEPT ONLY IN THE CASE OF DEATH OR PERSONAL INJURY WHERE AND TO THE EXTENT THAT APPLICABLE LAW REQUIRES SUCH LIABILITY. IN NO EVENT WILL THE AGGREGATE LIABILITY WHICH THE SELLER AND ITS AFFILIATES MAY INCUR IN ANY ACTION OR PROCEEDING EXCEED THE TOTAL AMOUNT ACTUALLY PAID TO THE SELLER BY THE CUSTOMER FOR THE SPECIFIC PRODUCT THAT DIRECTLY CAUSED THE DAMAGE

6. RESALE BY THE CUSTOMER

6.1 The Products shall not be resold by the Customer except in or from the containers supplied by the Seller and exactly as supplied by the Seller or as otherwise authorized in writing by the Seller. Customer may only resell Product within the Territory stated in the invoice that corresponds to each purchase order.

6.2 If the above condition is breached the Seller may without prejudice to any other rights or remedies available to it recover from the Customer damages for any loss or damage to the business of the Seller arising directly or indirectly out of such breach (including the amount of any liability on the part of the Seller to its distributors pursuant to the indemnities referred to in Clause 1.7 above). For the purpose of this condition, evidence of availability for purchase of a portion only of the Products delivered under the Contract shall (except to the extent to which the Customer shall prove to the contrary) be deemed to be conclusive evidence of availability of all the Products so delivered.

6.3 The Products are sold on the further condition that the following representation is true and correct. Customer warrants and represents to the Seller that:

6.3.1 The Products will not at any time subsequent to sale to the Customer become the subject of duty evasion

6.3.2 If at any time the Seller reasonably suspects that the condition in sub-clause 6.3.1 has been, or will be breached, the Seller may at its sole discretion:

(i) continue to supply the Products but only on a duty paid basis;

(ii) suspend or cancel in whole or in part further deliveries, without any further liability to the Customer;

(iii) request, and the Customer shall supply, full details (including name, address, type and quantity of product supplied) of the persons to whom the Products were re-sold, or

(iv) withdraw credit facilities, dates, or credit terms, and at the Seller's sole discretion, make further supplies on a strict cash with order basis only.

6.4 The Customer shall incorporate the conditions set out in Clauses 6.1 and 6.2 above in all resales of the Products except in the case of retail sales to persons not buying for re-sale and will procure that any person purchasing the Products from the Customer incorporates similar conditions (including this procurement obligation) in all such re-sales and if requested by the Seller will assign the benefit of those conditions to the Seller.

6.5 The Customer (or any of its affiliates) shall not (directly or indirectly): (i) sell the Products outside the Territory, or (ii) establish any branch or maintain any distribution depot for the Products outside the Territory.

7. INSOLVENCY OF CUSTOMER. If:

7.1 the Customer, whether voluntarily or involuntarily, makes any arrangement with its creditors or becomes subject to an administration or government order or (being an individual or firm) becomes bankrupt or (being a company) goes into liquidation or receivership (otherwise than for the purposes of amalgamation or reconstruction) or the equivalent occurs under any jurisdiction; or

7.2 a creditor takes possession of, or a receiver, trustee or liquidator is appointed over, any of the property or assets of the Customer; or

7.3 the Customer is unable to pay its debts generally as they become due or suspends any payments thereunder or ceases, or threatens to cease, to carry on business; or

7.4 the Seller reasonably considers that any of the events mentioned above is about to occur in relation to the Customer and notifies the Customer accordingly; then without prejudice to any other rights or remedies available to the Seller, the Seller shall be entitled to cancel these General Conditions and/or suspend any further deliveries to the Customer without any liability to the Customer and if any Products have been delivered but not paid for, all sums due by the Customer shall become immediately due and payable notwithstanding any previous agreement or arrangement to the contrary.

8. FORCE MAJEURE:

The Seller shall be under no liability whatsoever for failure to fulfill any order in whole or in part if such failure is due to any cause or event of whatever nature which is beyond the Seller's reasonable control or which makes such fulfillment impossible or illegal.

9. GOVERNING LAW; JURISDICTION. These General Conditions shall be governed by the laws of the State of Texas. You hereby irrevocably submit to the exclusive jurisdiction of the state or federal courts located in _______ County, Texas, in connection with any suit, action or other proceeding arising out of or relating to this Agreement and the transactions contemplated hereby, and hereby agree not to assert, by way of motion, as a defense, or otherwise in any such suit, action or proceeding that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced by such courts.