# Exhibit 3



COUNCIL OF
THE EUROPEAN UNION

Brussels, 5 December 2002

15231/02
ADD 1

LIMITE

EUROPOL 104

| NOTE | |
|---|---|
| From : | Presidency |
| To : | Council |
| No. prev. doc. : | 13996/1/02 EUROPOL 95 REV 1 |
| Subject : | Consolidated version of the Exchange of Letters related to the Supplemental Agreement |

Following the debate in COREPER of 4 December 2002, delegations please find in Annex a consolidated version of the Exchange of Letters related to the Supplemental Agreement reflecting the amendments agreed to by COREPER.

ANNEX

# Exchange of Letters related to the Supplemental Agreement between the United States of America and Europol on the exchange of personal data and related information

With respect to the Supplemental Agreement between the United States of America and Europol on the exchange of personal data and related information, the Parties would like to amplify the following points:

## 1. Liaison Officers and Privileges and Immunities

Europol is committed to support the position that any United States officials posted as Liaison Officers to Europol will receive reciprocal treatment to Europol officials posted as Liaison Officers in the United States. The United States regards such reciprocity as a necessary basis for maintaining privileges and immunities for Europol Liaison Officers in the U.S. at their current level.

The Parties refer to a letter sent by the United States State Department, which amplifies the issue of immunity for Europol under U.S. legislation and case law. This letter is annexed to this exchange of letters and shall be considered to be an integral part of it.

## 2. Article 1

The Parties note that for Europol the term "jurisdiction" in Article 1 refers to its mandate as laid down in the Europol Convention.

## 3. Article 3

The Parties note that information which is not strategic or technical information, as defined under the Agreement of 6 December 2001, will be covered by the Supplemental Agreement, in accordance with Article 3 (2) of the Supplemental Agreement.

The United States takes note that the other forms of co-operation foreseen under Article 3 (5) can only be contemplated by Europol as far as such co-operation is compatible with Europol's legal framework and any other applicable legal instrument which applies to such forms of co-operation.

## 4. Article 4

With respect to paragraph 4 the United States take note that under Europol's legal framework, it may only forward without prior request personal data under the Supplemental Agreement where it is necessary in individual cases for the prevention or combating of criminal offences for which Europol is competent. In the event that Europol shall find itself unable to directly forward such information to the United States it shall endeavour to obtain the consent of a Member State to transmit the information to U.S. authorities itself.

## 5. Article 5

The Parties agree that the phrase "prevention, detection, suppression, investigation and prosecution of any specific criminal offences and for any analytical purposes to which such information relates" as used in Article 5, paragraph 1 *sub* (a), includes, *inter alia*, exchange of information pertaining to immigration investigations and proceedings, and to those relating to *in rem* or *in personam* seizure or restraint and confiscation of assets that finance terrorism or form the instrumentalities or proceeds of crime, even where such seizure, restraint or confiscation is not based on a criminal conviction.

The United States takes note of the fact that under its legal framework, Europol may not presently authorise usage for other purposes than those included in paragraph 1.

The United States also takes note of the fact that under its legal framework, Europol may not presently transmit to the United States data that were transmitted to it by a Member State under this agreement without that Member State's prior consent.

Article 5, paragraph 4, of the Supplemental Agreement is to be understood not to permit the imposition of generic restrictions with respect to the sharing of personal data, additional to the express requirements of the Agreement, as a precondition to be imposed by either Europol or one of its Member States.

## 6. Article 6

The Parties agree that for Europol the term "particularly relevant" as used in this Article shall be understood in the same sense as the term "absolutely necessary" under Europol's regulations connoting information with a significant degree of usefulness. The term "race" is interpreted by Europol to include racial origin, whereas for the U.S. it shall reflect the concept of ethnicity.

## 7. Article 7

With respect to paragraph 1, Parties note that "competent authorities" shall mean those authorities who are responsible for functions relating to the prevention, detection, suppression, investigation and prosecution of criminal offences.
With respect to paragraph 3, the United States takes note of the fact that under its legal framework Europol is not allowed to provide authorisation for onward transmission beyond that reflected in this Agreement; conversely this Agreement shall not be relied upon as authority for Europol or its Member States to cause the onward transmission of data supplied by the U.S. except as authorised by this Agreement.

8. **Article 12**

The United States notes that under its laws and procedures, as well as those of Law Enforcement authorities at state and local levels, there are objective bodies and authorities authorised to oversee as appropriate the execution and implementation of the Supplemental Agreement. For example, various departments and agencies at the federal, state and local levels have established, by specific statutory provisions, regulations or administrative actions, offices of Inspectors-General, Internal Affairs divisions, or have designated senior officials or other components to oversee the general application of laws and procedures within the departments or agencies mandate or specific aspects thereof.

9. **Article 14**

With respect to Article 14, the Parties note that the joint evaluation foreseen in this Article will be aimed at determining if there is a need for further enhancement of the Agreement in all aspects, including the issues covered by this Exchange of letters.

*OFFICIAL LETTER*

*RECEIVED FROM US STATE DEPARTMENT*

November 26, 2002

Mr. Juergen Storbeck, Director
Europol
Raamweg 47, The Hague
The Netherlands

Re: Europol – Coverage under the Foreign Sovereign Immunities Act

Dear Director Storbeck:

I understand that as part of its process of review and approval of the Supplemental Agreement between the United States of America and Europol, the European Union has inquired regarding the extent to which Europol could be held liable for damages in U.S. courts based on its transmission of information to the U.S. under that Agreement. The U.S. legal framework relevant to this inquiry is set forth in the Foreign Sovereign Immunities Act ("FSIA"), Title 28, United States Code, Section 1602 et. seq.

There is an important preliminary point regarding the operation of the FSIA. A key objective in enacting the FSIA was to remove decisions over sovereign immunity from the Executive Branch and to place these decisions in the hands of the judiciary. Section 1602 (Findings and Declaration of Purpose) states that "determination by United States courts of the claims of foreign states to immunity from the jurisdiction of such courts would serve the interests of justice and would protect the rights of both foreign states and litigants in United States courts. . . . Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States." Thus, while we are happy to discuss in general how our courts have addressed several issues which could be relevant to coverage of Europol under the FSIA, you should be aware that the courts are legally authorized to make these determinations and only they could make a binding decision regarding Europol.

That being said, with respect to pontential liability of a foreign state in a suit brought in a U.S. court, the FSIA provides a presumption of immunity for a foreign state from the jurisdiction of U.S. courts, 28 U.S.C. 1604, unless the conduct forming the basis of the suit falls within a specific exception set forth in that statute, 28 USC 1605-1607.

A threshold question is whether the FSIA protections apply to an organization like Europol, which was established by treaty between a group of foreign governments rather than by a single foreign government. In a similar factual scenario, a U.S. court held that another European treaty-based organization, whose officials perform functions typically performed by national governmental agencies, qualified as a "foreign state" under the terms of the statute. See In re EAL Corp. v. European Organization for the Safety of Air Navigation, 1994 Lexis U.S. Dist. 20528 (D. Del. 1994). See also Gardiner Stone Hunter International v. Iberia Lineas Aereas de Espana, 896 F. Supp. 125, 131 (S.D.N.Y. 1995) (fn 6 and cases cited therein). The activities that Europol would engage in under the agreement - exchange of law enforcement information with the U.S. - are the type of governmental activity for which the FSIA provides protection. See e.g., Herbage v. Meese, 747 F.Supp. 60, 66-67 (D.D.C. 1990).

Another issue is whether immunity also extends to Europol officials carrying out duties under the Supplemental Agreement. Some U.S. courts have held that individuals acting as agents of the foreign sovereign in carrying out such governmental activities enjoy the same immunity as the sovereign itself. Id. at 66. Of course, the Europol liaison agents accredited to the United States already enjoy immunities in this country based upon their status as members of the EC Mission to the United States.

While Section 1605(a)(5) does provide an exception to foreign sovereign immunity for torts occurring in the United States, this exception would not appear applicable to the transmissions of information from Europol to U.S. law enforcement contemplated under the agreement. In Argentine Republic v. Amerada-Hess, 488 U.S. 228 (1988), the United States Supreme Court construed Section 1605(a)(5) to apply only where a tort has been committed within the territory of the United States, not where it was committed outside the U.S. even if it caused effects within the U.S. A reading of the FSIA reveals no other exception to immunity that would appear applicable to Europol activities under the Supplemental Agreement.

I hope this information is helpful in your consideration of the potential scope of liability in U.S. courts for cooperation between the U.S. and Europol under the Supplemental Agreement.

Sincerely,

Linda Jacobson
Assistant Legal Adviser
Law Enforcement and Intelligence